The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning, everyone. The first argued case here is number 20, 1996, v'real Foods LLC against Hamilton Beach Brands, Inc. Mr. Foster, please proceed. Thank you, Your Honor. Your Honor, this is William Foster on behalf of Hamilton Beach and Hershey Creamery Company. This case has a long and complicated history whereby we had an initial judge who conducted Markman and oversaw the first part of the case and the late stage was reassigned to the initial judge's retirement. As well as procedural posture, there was a number of key legal errors that were committed in the pretrial phase of this case. And these key errors were in a number of areas of well-established patent law. The first of which was that the trial court excluded a published Japanese patent utility model. The court held that this Japanese utility model was not prior art because it was not publicly accessible even though it was published in the Japanese Utility Model Gazette. What's your response to what seems to be fundamental issue here and that was the position, the powerful and successful position that was taken initially before the office that this reference was not available? Well, Your Honor, I mean, Your Honor, one of the key things, I mean, I want to start off, one of the things that v'real's counsel said is this was governed by an abusive discretion standard. And this is actually reviewed to know whether it gets plenary review, whether a reference is a prior art, it's a question of law. So therefore it is governed by a federal circuit precedent. And if we take a look at, if we take a look at Jazz, it did not mean to exclude this type of reference because it was already disseminated. In fact, there's a complicated issue here that hasn't been addressed. Please answer my question. How do you reconcile the positions that were taken with respect to this reference? Well, Your Honor, they're a different question. I mean, the declarations that were submitted with respect to whether or not it was reasonable for the searchers to find the reference in response to an IPR stop motion, which is not the same legal question that's in Jazz, whether or not the reference has been disseminated such that it's publicly available so that one of ordinary skill in the art could access it. Quite strong swan representations from people who've more than ordinary skill in the art that they could not find it. Well, Your Honor, Your Honor, they aren't of ordinary skill in the art. These were just searchers that we hired and the declarations outlined the parameters of their search. And they said why they couldn't find it was essentially. This is Judge Prost. I'm just following up on Judge Newman's question, which I'm not sure you've really answered yet. But this might be a different case if maybe the expert testimony had been a little softer or had been more discreet. But they used the term the most diligent search through global databases would not have uncovered this. I, too, I think the suggestion by Judge Newman is one I agree with is how you avoid the estoppel having made those 315 problem. Well, Your Honor, I don't think it's a fair representation of the declarations. It talked about the particulars of their search. It was and first of all, it wasn't expert testimony. It was fact testimony. They just they outlined the conditions of their search, and they just said why they couldn't find the reference. In fact, they were able to locate the reference when they were given the number. And as opposing counsel argued in the IPR estoppel motion. In fact, it was found by Japanese search firm NGB company. It's in it's in their briefing. So it was able to be found. It's just it was reasonable for these searchers not to find it conducting English language keyword searching. Mr. Foster, this is Judge Chen. Let's assume for the moment that the judge below found that the sworn declarations you provided said, essentially, uh, objectively speaking, no reasonable person that's highly motivated to find a relevant prior art would have been able to uncover this Japanese reference. Wouldn't that go a long way to supporting a judicial estoppel conclusion for whether this is a publicly accessible reference? Well, Your Honor, that's not what the declaration said, I'm asking you a hypothetical, then that's that's really what I'm trying to get at. We're trying. I think all three of us on the court here are are zeroing in on judicial estoppel and trying to understand the parameters of judicial estoppel. And and basically, my question to you is, under my hypothetical, why wouldn't there be judicial estoppel? Well, because there's there are different legal questions. There are different legal standards. I understand they are different legal questions. And then there's probably some daylight between those two standards, one being, you know, estoppel for an IPR and the other being public accessibility for prior art reference. Nevertheless, I think it is possible for judicial estoppel to apply if your proclamations that they actually touch on and preclude a counter statement later by your side that these were publicly accessible documents. And so that's what I'm trying to figure out from you. Don't you think that's theoretically possible? Well, Your Honor, I mean, first of all, I'd like I don't think it's like that. I'll take that to the side and assume that it's a 90. We can plainly see that the judge below relied in part on a judicial estoppel theory for precluding you from asserting Sato as a prior art reference. So can we get back to my hypothetical? I assure you. Do you remember it? Yes. Is the declaration so strong? Could the could someone say it can't be found? Therefore, it's dispositive whether or not it's publicly accessible. I still think under the test of jazz, you still have to look at the circumstances of the publication. I mean, there's still different facts. And just because just because someone says they can't find a particular reference, you still have to evaluate the circumstances of the publication. As you know, what if the declaration said, objectively speaking, no highly motivated, experienced, reasonable person would be able to find this prior art reference? Why wouldn't that be enough? Well, that would be their opinion and wouldn't necessarily reflect the actual facts. I think you have to look at like facts versus opinion. We have documentary evidence about the publication of the reference. So if it has been disseminated, I still think you have to go back to the jazz test where someone already skilled in the art could possibly locate the reference. You still have to evaluate the reference. Another concern I had was in this motion to preclude you from relying on Sato as a prior art reference. In your opposition, you never answered for all those prior sworn declarations you used, relied on, and succeeded on avoiding IPR estoppel. Is that right? I don't understand, Your Honor. Your opposition to the other side's motion to preclude you from relying on Sato? Right, Your Honor. Prior art reference. In that opposition, did you ever answer for your prior sworn declarations that you had relied on previously to successfully avoid IPR estoppel? Your Honor, I think the way we addressed it was that the declaration just stood for the proposition that these searchers conducted a diligent search and they couldn't find the reference because it was conducted with English language keyword searching and that the Sato reference was untranslated. And in fact, going to what the other side acknowledged in their briefing is that in asserting IPR estoppel, the NGB readily found it because it was a Japanese language reference. So your opposition did explain away your declaration? Your Honor, I believe it did. We always have asserted that the declarations, again, were specific about English language keyword searching. And if it's not in the opposition, it was definitely in the oral argument before the court. I mean, one of the issues here, too, is this was decided in a motion in Lemonet and there's a scant record and the evidence from the record to even review. The court only looked at the declaration, didn't look at any of the circumstances of the publication. So there's almost nothing to review about the Sato reference. It was just a three-page motion in Lemonet and this is clearly a summary judgment of whether or not we could use the Sato to invalidate patents. So even procedurally, this case should be remanded on that basis alone, given that the court never addressed the particulars of Sato. Mr. Foster, this is Judge Prost. Can I move you on to another issue before your time runs out? There's a lot going on in this case. You've got three different patents and there's a mixture of method patents and apparatus patents. So is my understanding correct that the reasonable royalty applies to the method claims and the lost profits applies to the apparatus claim? Yes, Your Honor. There was a finding that the method claims were not infringed by the customers. Okay. And remember, it only applies to one particular customer, Hershey. Wait a minute. On the method claims, speaking of the method claims, so you've got four method claims, right? Three in the 658 and one in the 662, if I got that right? Yes, Your Honor. All right. So let me turn you to the splash shield issue. It's a little odd, right? My understanding is both parties sort of agreed and accepted that the splash shield was a lid, but somehow that got translated during the trial to something arguably beyond that. Were there objections made at trial? Were there arguments by you? Were there arguments on your side with respect to the claim construction and how this exceeds the claim construction the jury has been given? How did that go? Your Honor, I think that's well established in the briefing that we repeatedly said that we asked questions of Dr. Maynes whether or not he ever tested the shield by itself. And he answered that he always considered the entire splash shield assembly, which included the weight and the guide rods, he never considered the shield by itself. And we provide a counter-expert testimony saying that wasn't proper, that the actual claim construction was a shield by itself. So the record in our briefing is replete with examples. Anything with the jury instructions implicated at all? Did you request a jury instruction to that effect? Well, the claim constructions were part of the jury binder, and it did say that the shield was just a lid. Okay, so let me just ask you the bottom line. Hypothetically, if one were to agree with you on those three claims of the 658, what does that do to the reasonable royalty damages award? What does that do to that calculation? Your Honor, it actually wouldn't change the calculation at this point because there's the 150 patent that there's already been a finding. So at this point, it wouldn't change the reasonable royalty calculation because there was a single royalty for all the patents. If I could just clarify just, but I thought the 150 were apparatus claims that were covered in the lost profit, not in the reasonable royalty. What am I wrong about that, right? Well, Your Honor, there's part of the 150 patent that would be, it's for our use of the machines, and then it would also cover non-Hershey machines. So for example, where there weren't- In other words, even if we were to agree with you on the splash shield claim construction issue with regard to 610 and 11 of the 658, that wouldn't get you anywhere in terms of a decrease in the reasonable royalty damages. Is that what you told me? Right. As long as the other ones weren't changed as well as the 150 patent, because there are some non-Hershey sales that would be covered by that. Okay. Thank you. Mr. Foster, is that also true on the lost profits award? Well, that's not completely true of the lost profits award. So if the apparatus claims were reversed, there would be no basis for the lost profits. So right now- That would be every single apparatus claim, right? If one of the apparatus claim findings of liability is upheld, then the lost profits award stands. Is that right? Yes, Your Honor. We would agree with that. Okay. I mean, again, we can test it based on sufficient evidence, but in terms of if you're hypothetical, that's correct. Okay. So I guess that's why you need to all of these infringement findings for all these different claims. Yes, Your Honor. Okay. Okay. Any more questions for Mr. Foster at this stage? No, thank you. No, thank you. Okay. Good. Mr. Foster, we'll save you rebuttal time and we'll hear from Mr. Smith. Good morning, Your Honor, and may it please the court, Roger Smith on behalf of the Appellees and Cross Appellants for Real Foods and Rich Products. I'll start with the SOTO reference that the court had many questions about. I just want to be clear up front, we are not maintaining that the standard for 315E-IPR estoppel dictates the outcome here. We in the district court argued that the correct standard was the Jazz Pharmaceutical Standard, and at oral argument, the appellants conceded that that was the correct standard. We are also not arguing that in a different case, under different facts and circumstances, that a Japanese unexamined utility model application could never be prior art. Our argument here, as the court has instructed, under a case-by-case analysis of the facts and circumstances, is that the appellants who bore the burden of proof here, and we could discuss what the proper burden was, but our position is under any burden, they failed to meet that burden to show, to make a satisfactory showing, as required by Jazz, that this SOTO reference... What, in your view, would be a sufficient showing, recognizing that the two standards are not identical? Your Honor, I think... I mean, their experts seem to have pretty strong language. Was that the issue that you there? Your Honor, I think the categorical nature, which all three of the members of the panel touched on, the categorical nature of the declarations, it's sweeping in its scope, and I did want to correct one statement that Mr. Foster made. The reality is both Ms. Nielsen and Mr. DeMarco, in their declarations, said even with the reference number of the SOTO reference, they could not find it, and there is no suggestion in the declarations that the searches were limited to English language. In fact, Ms. Nielsen suggests she went beyond English language searches, and Your Honor has in the record the rest of the declarations in terms of what databases they used and the millions of references they looked for, and it was the categorical nature that this reference could not be found, even with the reference number, but maybe perhaps more question, Judge Prost, there's also an absence of evidence. It is certainly possible that a searcher in 2015 or 2016 might not have been able to find this, but the proponent of this printed publication could have come in with evidence that suggested, notwithstanding the fact that it couldn't be found, that it was in fact publicly disseminated back in 1992 or 2001 or whatever time frame they're looking at, but there's a complete absence of any such evidence here. There's no declaration from anyone related to the Japanese Patent Office procedures, how these things are classified or published. There's no declaration from a Japanese attorney or even a declaration from the prior art searcher here who did eventually find SOTO. There is just no way to reconcile the categorical nature of the statements made in the Nielsen and DeMarco declarations. If Hamilton had presented all that evidence, would that have been enough to overcome judicial estoppel? I apologize, Judge Shen. I didn't catch the first part of your question. Okay. You were telling a long story about what the other side could have done to establish the accessibility of SOTO, and my question to you is, if they had gone to all those lengths to oppose your motion in Limine, would that have been enough to overcome judicial estoppel or to refute judicial estoppel? Your Honor, it may have been. Of course, this is in the realm of hypotheticals because we don't know what those declarations would have said, but to your point earlier in questioning Mr. Foster, there may be daylight between the two standards such that declarations submitted in opposing a 315 estoppel motion might not foreordain the outcome of a publicly accessible printed inquiry. There could be daylight, and I could imagine you could bring forward evidence that would allow here the appellants to have succeeded on both motions, but given the nature of the evidence they brought forward in categorically opposing the IPR estoppel and providing no additional evidence to explain or justify a conclusion by the district court that public reference, I think it's the combination of those things without necessarily having to get to the question of judicial estoppel and attempting to harmonize the different standards under 102 and under 315. Unless the court has other questions for me on SOTO, I'm happy to move on to the Your Honor, the splash shield construction was indeed an agreed-upon construction. It was simply a lid. Yes, I'm sorry. This is Judge Prost. I just wanted you to be clear that the agreed-upon construction was just that it was a lid and not the additional features of this apparatus, right? Your Honor, the literal construction was lid for cup opening. There was no particular shape specified for that lid. There was no negative limitations implied. It was simply the lid. It's the aspect of the machine that covers the cup, whether that's just a plastic lid or a plastic lid with other things attached to it. I don't know that attaching things to a piece of plastic necessarily means it's no longer the lid, and I think that's the primary issue that Judge Conley wrestled with. Wait, but didn't everybody consider, wasn't the discussion of the lid with the bells and whistles that this is the splash shield, that the splash shield includes all these other things beyond just the lid? It's not like, okay, you can add other things and you can still be infringing on a... This was different, right? You understand my question? I think I do, and if I don't, please let me know, Your Honor. What I would say is that there was a... Back to your earlier question about whether this was preserved, there was a summary judgment motion made by the appellants here to argue that the lid, the piece of plastic alone, could not satisfy this limitation. We opposed that motion and ultimately prevailed at the summary shorthand way of saying the lid, not just the piece of plastic, but also the guide rods and the weight, that that satisfies the splash shield limitation, and Judge Conley denied that motion for summary judgment and allowed the case to proceed to trial for the jury to decide whether the combination of the plastic, the guide rods, and the weight satisfy the claim construction provided by the court. This is Judge Chen. Just so I understand, the pitch you made to the jury as the patent owner was that the entire contraption, the plastic cover, the guide bars, and the weight sitting on top of the guide bars, that whole thing was a lid? Obviously, the claim says shield, but shield has been translated through claim construction to be and so were you saying the whole thing was a lid? Or were you saying to the jury, well, just the plastic covering itself is the lid? Your Honor, the expert testimony from our expert was that he considered all the contraption, as I think you said, all three pieces were the lid because they worked together. They had the purpose of a lid, of covering the opening, and also providing weight so that the lid did not move away from the copper vessel itself. So his testimony at trial, our testimony presented through our expert, was that the assembly, the three pieces together, functioned as a unit and should be considered the splash shield. You were answering the question. You started to, it appeared to me, to make an argument about whether there was adequate preservation here, and I didn't understand what you were saying to deal with that question. I mean, just because the district court made that statement in denying summary judgment of non-infringement, that wasn't an appealable order. What were they supposed to with that at that time? They couldn't appeal it, right? That's right, Your Honor. I didn't mean to suggest waiver. I was meaning to suggest, by way of background, that the question was presented as a factual matter for the jury to decide whether or not the splash shield assembly, as identified by the patentee here, as the infringing aspect of the invention. Why is that? I mean, I'm having a hard time intellectually getting my brain around why, if the definition that everyone's agreed to, now you put the words literal, literal on it, but if the literal definition is just the lid, I'm having a hard time why it's fact-finding rather than a claim construction question to ask the jury to decide whether this splash is not just a lid, but these other things as well. You understand my issue? You and, obviously, the district court characterized this other question, second question, as being a fact question for the jury, and I'm having a hard time seeing why that is not a matter of claim construction. Your Honor, I think the short answer is because it wasn't there was, and it would have... When should it have been presented? It wasn't like there was no claim construction was plain and ordinary meaning. The agreed-on claim construction was a lid, so why would anything more have to have been presented if the claim construction was over and done with, and it was, as you say, literally correct that it was only the lid? Your Honor, I believe that the appellants, when they understood that the parties had a... What, as Your Honor is indicating, may very well be more properly viewed as a claim construction dispute, that that's when they should have asked for a further construction of that limitation so that it wasn't left to the jury to decide, assuming that was an improper procedural move by the district court, and I'm unaware of any request by the appellants here for further claim construction to further specify what was a lid. They had a claim construction. Why wasn't it up to you to request a further claim construction that included what you presented to the jury, which is all these doodads are also included in the definition of splash, i.e. lid? What would they have had to do? What were they supposed to do? Say, wait a minute, we have a claim construction that we like, but we want to change it? I think that's the construction they wanted. I think both parties, Your Honor, were comfortable with the claim construction, and that's why it moved forward without any further construction. I take your point that both sides could have asked for further construction if they thought it was necessary, but neither side did here. Unless Your Honor has any further questions for me, I'll reserve the balance of my time. Now, did you want to say anything on your cross appeal? Your Honor, I'm happy to rest on our papers on that, and as a result, forfeit my rebuttal time. Okay. Is that all right with the panel? Yes. Yes. All right. Good. Thank you. Then we'll hear from Mr. Foster. Thank you, Your Honor. Just a couple of corrections. The declarations didn't say they couldn't find the reference once they were given the number. It says they checked for SATO and they found it. Paragraph 17 of the DeMarco Declaration says they found it in the IPA doc. Again, they couldn't find it with a translation. These aren't so strong they said no one could find it. These declarations are literally just they couldn't find it based on their searches using English language key searching. And again, there's a lot of case laws saying just because a reference can't be found with typical search tools doesn't mean, like the Freeman case that we cited in our brief, doesn't mean it's not prior art. If it's just like a single thesis in a library somewhere, it can still be searchable. I mean, the whole Jazz case was papers that were presented at a conference under an events tab. They weren't indexed or searchable whatsoever. So the court, by equating, saying if you succeed on the IPR estoppel standard, you automatically lose on publicly accessibility was wrong because the evidence of the reference itself, which they never contested the accuracy at the lower court, shows that the date of publication, who was published by, and where it was published. Your Honor, I think I'm out of time. If you have any further questions. Any more questions, Mr. Foster? No. All right. No, thank you. Okay. Well, thanks to both counsel. The case is taken under submission.